IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **RODNEY A. HURDSMAN,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **CASE NO. 1:17-CV-00290-SS-AWA** |
| | § | **JURY TRIAL DEMANDED** |
| **WILLIAMSON COUNTY SHERIFF** | § | |
| **DEPUTIES: PAKLUDA, GLEASON,** | § | |
| **WILLIAMS, BRUMLEVE, CASEY,** | § | |
| **AND; CORRECTIONAL OFFICERS:** | § | |
| **MOBLEY, BARCENAS, HERRERA,** | § | |
| **VILLAREAL, VOISENE, WHELESS,** | § | |
| **BARNETT, HARRIS, NIRA, DAVIS,** | § | |
| **CHAMPION, AND; THE COUNTY OF** | § | |
| **WILLIAMSON, TEXAS,** | § | |
| *Defendants.* | § | |

**THE WILLIAMSON COUNTY DEFENDANTS' PARTIAL MOTION TO DISMISS
PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Defendants Williamson County Sheriff Deputies: Pakluda, Gleason, Williams, Brumleve, Casey; and Correctional Officers: Mobley, Barcenas, Herrera, Villareal, Voisene, Wheless, Barnett, Harris, Nira, Davis, Champion; and Williamson County, Texas (collectively, the "County Defendants") file this Partial Motion to Dismiss Plaintiff's Original Complaint, and would respectfully show unto the Court the following:

**I.   INTRODUCTION**

Half of the twelve (12) causes of action (referred to as "Counts") brought by *pro se* Plaintiff Rodney A. Hurdsman ("Hurdsman") against the County Defendants fail to allege a constitutionally cognizable harm or injury, and, therefore, are subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Hurdsman brings these Counts pursuant to 42 U.S.C.

§ 1983 ("Section 1983") against sixteen (16) officers of the Williamson County Sheriff's Office ("WCSO") and Williamson County based on alleged incidents that occurred during his incarceration in the Williamson County Jail ("WCJ") and the multitude of grievances he filed therein.

Although Hurdsman's Complaint is replete with legal "buzz words," the following Counts fail as a matter of law because the alleged conduct, even if true, did not result in an actual injury rising to the level of a constitutional violation:

- Count One: Campaign of Retaliation;
- Count Seven: Denied Access to the Courts;
- Count Eight: Denied Freedom of Religion; and
- Count Nine: Denied the Right to Correspond with the Public.

Hurdsman's retaliation claim is not actionable because he was not chilled or deterred from exercising his constitutional rights. In fact, he continued to repeatedly file grievances and this lawsuit after the alleged retaliation occurred. His access-to-courts claim fails because he did not suffer any injury to litigation involving his criminal convictions or the conditions of his confinement. The only injury he alleges relates to secondary litigation involving property, which is an "incidental and perfectly constitutional consequence" of incarceration. Similarly, the confiscation of Hurdsman's Bible and "other religious materials" was no more than a *de minimis* injury which did not prevent him from practicing his religion, significantly modify his religious behavior, or violate his religious beliefs. Lastly, the confiscation of Hurdsman's correspondence materials and temporary loss of phone privileges do not rise to the level of a constitutional violation because other means were available for him to communicate with his family and

public. Because Hurdsman has not suffered an actionable injury as a result of these alleged constitutional violations, all of these Counts are subject to dismissal.

Additionally, two (2) of Hurdsman's Counts are not cognizable harms under Section 1983:

- Count Ten: Harassment, Intimidation, and Threats; and
- Count Eleven: Conspiracy to Violate Civil Rights.

It is well settled in this Circuit that verbal harassment and threats do not amount to constitutional violations. The Intracorporate Conspiracy Doctrine is equally well established, and sets forth that the acts of officers are the acts of the entity, and an entity cannot conspire with itself. All the parties to the conspiracy alleged by Hurdsman are officers of the WCSO, and, consequently, his conspiracy claim is unsustainable. As these Counts fail to state a claim for which relief can be granted, they must be dismissed as a matter of law.

Lastly, the individual County Defendants Lt. Williams, Sgt. Casey, Voisene, and Champion[1] are also entitled to dismissal from this lawsuit because the only factual allegations brought against them pertain to the above dismissible Counts.

## II. HURDSMAN'S FACTUAL ALLEGATIONS[2]

Hurdsman was incarcerated in the WCJ from April 27, 2015,[3] until July 8, 2017.[4] During his incarceration, he filed numerous formal grievances relating to indigent mailing services for his legal mail and the inmate showers.[5] In response, and around April 2016, Hurdsman alleges that Defendant Williams and Defendant Voisene told him that Defendants Gleason and Pakluda

---

[1] Actually, Hurdsman presents *no* factual allegations relating to Champion.
[2] Although the County Defendant deny almost all of Hurdsman's allegations, his factual allegations are taken as true for purposes of this Motion only.
[3] Plf.'s Original Compl., Dkt. No. 1, ¶ 15.
[4] Plf.'s Letter/Notice of Change of Address, Dkt. No. 20.
[5] Plf.'s Original Compl., ¶¶ 17, 18, 24, 31, 32.

would make "things very hard on him" if he continued to pursue these grievances.[6] A few weeks later, Hurdsman claims he filed another grievance and was subsequently placed in disciplinary segregation.[7] Afterwards, he continued to submit a number of grievances relating to his legal mail and other issues.[8]

Around September 2016, Hurdsman claims he made verbal complaints about being placed in disciplinary housing.[9] On September 21, 2016, allegedly in response to these complaints, Hurdsman alleges that he was tazed by several of the individual County Defendants and placed in a restraint chair.[10] That same day, Hurdsman alleges that several of the individual County Defendants removed items from his cell, including writing instruments, paper, envelopes, postage, mat, Bible, and "other religious materials."[11] He also alleges that Defendant Casey and others restricted him from purchasing writing instruments, paper, envelopes, and postage from the jail's commissary, and he had to trade his food with other inmates to obtain these items.[12] Hurdsman also alleges he was denied "all access to an adequate law library," means to duplicate his legal pleadings, and a thumb drive containing legal documents.[13] He also claims he was placed on "loss of privileges status," which kept him from using the telephone for personal calls.[14] According to Hurdsman, these limitations were in place for over thirty (30) days.[15]

At this time, Hurdsman claims he was "a party to two civil cases in two separate federal jurisdictions, three civil cases in state jurisdictions, and several criminal cases in the State of

---

[6] Plf.'s Original Compl., ¶¶ 33–36.
[7] Plf.'s Original Compl., ¶¶ 37–39.
[8] Plf.'s Original Compl., ¶ 42.
[9] Plf.'s Original Compl., ¶ 46.
[10] Plf.'s Original Compl., ¶¶ 47–50.
[11] Plf.'s Original Compl., ¶¶ 55, 63, 67.
[12] Plf.'s Original Compl., ¶¶ 64–66.
[13] Plf.'s Original Compl., ¶¶ 68, 70.
[14] Plf.'s Original Compl., ¶ 73.
[15] Plf.'s Original Compl., ¶¶ 55, 66, 73–74.

Texas."[16]  As a result of not having access to correspondence materials and his legal documents, Hurdsman alleges that he "suffered prejudicial adverse rulings in federal court, that cause[d] him to lose his interests in tens of thousands of dollars worth [*sic*] of his property, which was at issue in the case he was prosecuting."[17]

Hurdsman continued to submit grievances regarding all of this alleged conduct.[18]  In total, he submitted over twenty (20) grievances during his incarceration.[19]

### III.    ARGUMENTS & AUTHORITIES

**A.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

However, the complaint must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

---

[16]  Plf.'s Original Compl., ¶ 70.
[17]  Plf.'s Original Compl., ¶ 71.
[18]  *See* Plf.'s Original Compl., ¶¶ 62, 75.
[19]  Plf.'s Original Compl., ¶ 75.

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (modification in original). The complaint "must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal citations omitted). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Id.* at 421. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (internal citations omitted).

**B.     Hurdsman's Retaliation Claim is Not Actionable Because There Was No Chilling or Deterrent Effect**

Hurdsman has failed to state a cognizable claim of retaliation against the County Defendants because their alleged actions, even taken as true, did not chill or deter him for exercising his constitutional rights. "Trial courts are required to carefully scrutinize civil rights actions based on claims of retaliation as those claims 'must [ ] be regarded with skepticism.'" *Perez v. Williams*, No. Civ. 7:08-CV-030-O, 2010 WL 1962773, at *1 (N.D. Tex. May 17, 2010) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). A Section 1983 claim for retaliation "is actionable <u>only</u> if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Huff v. Jackson*, No. C-11-149, 2011 WL 2223815, at *4 (S.D. Tex. June 7, 2011) (quoting *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008)) (emphasis added).

Here, Hurdsman cannot demonstrate that he was chilled or deterred from exercising his constitutional rights after the County Defendants' allegedly retaliated against him for filing grievances. To the contrary, his Complaint establishes that he continued to exercise his

constitutional rights by filing numerous grievances and this lawsuit. After each alleged retaliatory action—including, verbal threats from Defendants Williams and Voisene, placement in disciplinary segregation, tazing and placement in restraint chair, removal of items from cell, and restriction from purchasing certain items in commissary[20]—Hurdsman continued to file grievances on multiple occasions.[21] In fact, he filed over twenty (20) grievances while incarcerated in the WCJ.[22] He also filed this lawsuit and a "formal complaint with the United States Postal Service, Office of the Inspector General" regarding his legal mail.[23] Hurdsman was clearly not deterred by the County Defendants' alleged retaliation; he was arguably emboldened by it. Courts in this Circuit routinely dismiss retaliation claims in similar circumstances. *See, e.g.*, *Robinson v. Luker*, 199 F.3d 437, 437 (5th Cir. 1999) (per curiam) (unpublished) (affirming dismissal of retaliation claim as frivolous where plaintiff filed three (3) more grievances after the alleged retaliation); *Bell v. Wathen*, No. 07-10609, 2008 WL 1743887, at *1 (5th Cir. Apr. 14, 2008) (per curiam) (affirming dismissal where the alleged retaliatory acts did not deter plaintiff from filing subsequent grievances or a lawsuit); *Hill v. Gaston*, No. G-03-966, 2007 WL 869536, at *2 (S.D. Tex. June 7, 2011) (dismissing as frivolous plaintiff's retaliation claim where he later filed six (6) grievances and continued to prosecute his lawsuit against the prison officials). Likewise, Hurdman's retaliation claim is not actionable and must be dismissed.

C.  **Hurdsman's Alleged Injury to Secondary Litigation Does Not Support an Access-to-Courts Claim**

Hurdsman's access-to-courts claim fails as a matter of law because he did not suffered an actual injury relating to litigation involving his criminal conviction or the conditions of his confinement. To succeed on a claim of denial of access to courts, a plaintiff must show he

---

[20] Plf.'s Original Compl., ¶¶ 33–39, 47–50, 55, 63–64, 67–70.
[21] Plf.'s Original Compl., ¶¶ 37, 42, 46, 62, 75.
[22] Plf.'s Original Compl., ¶ 75.
[23] Plf.'s Original Compl., ¶ 45.

suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349–52 (1996); *Carlson v. Quada*, 295 F. App'x 623, 625 (5th Cir. 2008) (per curiam). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. The right to access to courts "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351). Therefore, a plaintiff must demonstrate that the lack of access has prejudiced his position as a litigant with regard to his criminal conviction or conditions of confinement. *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997) ("Thus, neither any frivolous filings nor secondary litigation activity, *i.e.*, legal research and writing that does not involve preparation of lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise" an access-to-court claim); *Carlson*, 295 F. App'x at 625; *Reed v. Dallas Cty. Sheriff's Dep't*, No. 3:03-CV-2166-R, 2004 WL 2187104, at *3 (N.D. Tex. Sept. 28, 2004), *report and recommendation adopted*, No. 3:03-CV-2166-R, 2004 WL 2495085 (N.D. Tex. Nov. 4, 2004). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Reed*, 2004 WL 2187104, at *3 (quoting *Lewis*, 518 U.S. at 355).

Hurdsman's Complaint confirms he has not suffered any prejudice to any pending or contemplated challenges to his criminal conviction or conditions of confinement. The only injury he alleges relates to secondary litigation involving property:

> "As a result of Gleason and Pakluda denying the Plaintiff all access to the courts . . . the Plaintiff suffered prejudicial adverse rulings in federal court, that cause [*sic*] him to lose his interests in tens of thousands of dollars worth [*sic*] of his property, which was at issue in the case he was prosecuting."[24]

---

[24] Plf.'s Original Compl., ¶ 71.

Hurdsman alleges no actual injury to litigation regarding the conditions of his confinement—and he cannot because he was able to file this lawsuit addressing those alleged issues. He also has not alleged any actual injury relating to the criminal matters for which he is incarcerated. Because Hurdsman's only alleged injury relates to secondary litigation, he has failed to state a valid access-to-courts claim. *See Carlson*, 295 F'Appx at 625 (affirming dismissal because plaintiff did not identify any actual injury to challenges to his criminal conviction or conditions of confinement); *Reed*, 2004 WL 2187104, at *3 (ruling plaintiff had no standing to proceed with his access-to-courts claim because he was able to file the instant lawsuit relating to his confinement and alleged no actual injury regarding his criminal case). Accordingly, this claim fails as a matter of law and must be dismissed.

### D. Confiscation of a Bible and "Other Religious Materials" is No More Than a *De Minimis* Injury Which Did Not Burden the Exercise of His Religion

Assuming that Hurdsman's alleged religious beliefs are sincerely held, the confiscation of his Bible and "other religious materials" is merely a *de minimis* injury that did not impose a substantial burden on his religious exercise. To establish a free exercise violation under the First Amendment, a plaintiff must demonstrate that prison officials prevented him from engaging in religious conduct without any justification related to legitimate penological concerns. *Turner v. Safely*, 482 U.S. 78, 89 (1987). Additionally, the plaintiff must allege he suffered a physical injury that was more than *de minimis*. *Carter v. Hubert*, 452 F. App'x 477, 479 (5th Cir. 2011) (per curiam).

Confiscation of an inmate's Bible and "other religious materials" does not deprive an inmate of the right to believe, worship, and profess his chosen religion, and, therefore, does not rise to the level of a First Amendment violation. *Id.* (dismissing appeal as frivolous and ruling that confiscation of inmate's Bible and religious pamphlets was not more than a *de minimis*

injury); *Simpson v. Dir., TDCJ-CID*, No. 4:15CV644, 2017 WL 1022783, at *2 (E.D. Tex. Mar. 16, 2017) (ruling that confiscation of religious study materials did not amount to a free exercise violation); *Rubio v. Diaz*, No. SA-08-CV-0942NN, 2010 WL 183879, at *1 (W.D. Tex. Jan. 15, 2010) (ruling inmate failed to state a claim under the Free Exercise Clause although his Bible and Bible study correspondence were confiscated because he was not deprived of ability to practice his religion).

Nor does Hurdsman state a claim for which relief can be granted under the Religious Land Use and Institutionalized Persons Act ("RLUIPA")—to the extent he alleges such a claim. Under RLUIPA, the plaintiff bears the initial burden of proving that "the challenged government action 'substantially burdens' the plaintiff's 'religious exercise.'" *Mayfield v. Tex. Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008) (internal citations omitted). A government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).

Here, Hurdsman did not suffer any substantial burden. He makes no allegations demonstrating that he had to significantly modify his religious behavior or violate his beliefs.[25] As with his free exercise claim, confiscation of Hurdsman's Bible and "other religious materials" does not rise to a violation of the RLUIPA. *See, e.g.*, *Sam v. Fort Bend Cty. Sheriff's Office*, No. H-12-3425, 2014 WL 637137, at *6 (S.D. Tex. Feb. 18, 2014) (ruling that deprivation of inmate's Bible and study materials did not violate his rights under the First Amendment or RLUIPA); *Rubio v. Diaz*, 2010 WL 183879, at *1 (ruling that confiscation of Bible and Bible study correspondence did not rise to the level of a substantial burden). Hurdsman has failed to

---

[25] *See* Plf.'s Original Compl., ¶ 67.

state a free exercise claim under the First Amendment and the RLUIPA, therefore, the County Defendants are entitled to dismissal of this claim.

**E.  Hurdsman Suffered No Constitutional Violation By Being "Denied the Right to Correspond with the Public" Because He Had Other Means of Communication Available to Him and He Alleges No Actual Injury**

The confiscation of Hurdsman's writing instruments, paper, envelopes, and postage, and his temporary loss of phone privileges do not give rise to a constitutional violation. "Not all threats or deprivations in the prison setting give rise to a constitutional violation." *Robinson*, 199 F/3d at 437 (citing *Gibbs v. King*, 779 F.2d 1010, 1046 (5th Cir. 1986)). Restrictions to means of communication do not violate constitutional rights as long as the inmate does not suffer from an <u>inability</u> to communicate with the courts, counsel, family, or friends. *See Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). Where other means of communication were available to the inmate, courts have found no constitutional violation. *See, e.g.*, *Bruce v. Chad Lee*, No. 3:17-CV-414, 2017 WL 2910996, at *2 (W.D. La. May 31, 2017), report and recommendation adopted sub nom. *Bruce v. Lee*, No. 3:17-CV-0414, 2017 WL 2883647 (W.D. La. July 6, 2017) (finding no constitutional violation where inmate on phone restrictions had access to mail); *Castillo v. Blanco*, No. 07-215, 2007 WL 2264285, at *7 (E.D. La. 2007) (finding no constitutional violation where inmate was denied use of telephone, "especially where adequate means of communication, such as access to the mail, [was] available"); *Brown v. Day*, No. 99-1436, 1999 WL 816378, at *6 (E.D. La. Oct. 7, 1999) (dismissing claim, as frivolous, that inmate was not allowed to utilize the telephone for eighty-four (84) days because he had other means of communication); *Decraene v. U.S.*, No. 97-3190, 1999 WL 246708 (E.D. La. April 26, 1999) (finding no constitutional violation where inmate was restricted from telephone access for thirty (30) days because inmate communicated with others through personal visits and mail).

Here, Hurdsman does not allege that he was restricted from all means of communication, such as personal visits and receiving mail from his family and others.[26] Additionally, Hurdsman admits he was able to obtain writing instruments, paper, envelopes, and postage by bartering with other inmates.[27] Because Hurdsman retained alternative means of communicating with his family and others, his claim does not rise to the level of a constitutional violation and dismissal is warranted.

Furthermore, Hurdsman has not alleged any actual injury as a result of the confiscation of his correspondence materials and loss of phone privileges. There is no indication that he had been or was planning to engage in written correspondence or telephone communication that was prevented by the County Defendants' alleged actions. *See Sandoval v. Fox*, 135 F. App'x 691, 691–92 (5th Cir. 2005) (affirming dismissal as frivolous plaintiff's claim regarding erroneous distribution of prisoner mail because he did not allege that he suffered any actual injury). Because Hurdsman has failed to demonstrate any actual injury, his claim is subject to dismissal for this independent reason as well.

**F.     Hurdsman's Claim for Harassment, Intimidation, and Threats is Not Cognizable Under Section 1983**

It is well settled that verbal harassment, intimidation, and threats do not amount to constitutional violations under Section 1983. *See, e.g.*, *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir.1995) ("[M]ere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations."); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.");

---

[26] Plf.'s Original Compl., ¶¶ 63–66, 73.
[27] Plf.'s Original Compl., ¶ 66. To the extent that Hurdsman is claiming that his alleged restriction from purchasing writing instruments, paper, envelopes, and postage from the jails commissary also constitutes a constitutional violation, such a claim would also fail as a matter of law. "There is no constitutional right for an inmate to be able to purchase items from a commissary. *Bruce*, 2017 WL 2910996, at *4 (collecting cases) (finding no constitutional violation where inmate complained he was restricted from purchasing "writing materials" from commissary).

*McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[A]s a rule, mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation."). "Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." *Means v. Mizell*, No. 06-4542, 2006 WL 3544857, at *5 (E.D. La. Nov. 13, 2006).

Therefore, Hurdsman has failed to state a claim for which relief can be granted, and his cause of action for "harassment, intimidation, and threats" is subject to dismissal. *See Brown v. Craven*, 106 F. App'x 257, 259 (5th Cir. 2004) (per curiam) (holding that correctional officer's mere threatening language and gestures did not, even if true, amount to constitutional violations); *Digges v. Jeffcoat*, 149 F.3d 1177, 1177 (5th Cir. 1998) (per curiam) (affirming dismissal where prisoner alleged officers verbally harassed him and shone a light in his cell); *Means*, 2006 WL 3544857, at *4–5 (dismissing claim where officer allegedly threatened to break prisoner's jaw and "f--- over him").[28]

**G.    There Can Be No Conspiracy Between Officers of the Same Entity**

Hurdsman cannot establish a conspiracy claim as a matter of law because the alleged parties to the conspiracy—the individual County Defendants—are all employees of the WCSO. "In order to state a claim for conspiracy under § 1983, a plaintiff must alleged that there was (1) an agreement between private and public defendants to commit an illegal act and (2) an actual deprivation of constitutional rights." *LaFleur v. McClelland*, No. 4:13-CV-425, 2013 WL 5148181, at *2 (S.D. Tex. Sept. 11, 2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.

---

[28] To the extent Hurdsman is alleging that placement on suicide watch was harassment, such claim also fails as a matter of law. *See* Plf.'s Original Compl., ¶ 76. "There is no constitutional right to avoid being placed on suicide watch." *Johnson v. McVea*, No. 15-1586, 2015 WL 1242840, at * 6 (E.D. La. Mar. 7, 2016), report and recommendation adopted, No. 15-1586, 2016 WL 1223067 (E.D. La. Mar. 29, 2016) (internal citations omitted). "Temporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment under the Eighth Amendment." *Sheldon v. Smith Cty. Jail Med. Clinic*, No. 6:08-cv-68, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010), aff'd, 439 F. App'x 343 (5th Cir. 2011).

1994).  "The general rule is that the acts of an agent are the acts of the corporation; thus, a 'corporation cannot conspire with itself any more than a private individual can.'"  *LaFleur*, 2013 WL 5148181, at *2 (quoting *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir.1994)).  Courts in this Circuit have applied this Intracorporate Conspiracy Doctrine to other entities, including law enforcement entities.  *See, e.g.*, *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997) (police department and its officers); *LaFleur*, 2013 WL 5148181, at *2 (same); *Shaw v. Hardberger*, No. SA06-CA751-XR, 2007 WL 1174202, at *12 (W.D. Tex. Apr. 19, 2007) same).

Here, the parties to the alleged conspiracy are officers of the WCSO, a single entity.[29]  Because the WCSO cannot conspire with itself, Hurdsman's conspiracy claim fails as a matter of law and must be dismissed.  *LaFleur*, 2013 WL 5148181, at *2 (dismissing conspiracy claim against officers of the same police department); *Shaw*, 2007 WL 1174202, at *12 (same).

## IV.   PRAYER

Based on the foregoing, THE COUNTY DEFENDANTS pray the Court grant this Partial Motion to Dismiss and order that the following of Plaintiff's Counts be dismissed with prejudice:

- Count One: Campaign of Retaliation;
- Count Seven: Denied Access to the Courts;
- Count Eight: Denied Freedom of Religion;
- Count Nine: Denied the Right to Correspond with the Public;
- Count Ten: Harassment, Intimidation, and Threats; and
- Count Eleven: Conspiracy to Violate Civil Rights.

The County Defendants further pray that the following individual County Defendants be dismissed from this lawsuit with prejudice because the only allegations raised against them pertain to the above dismissible Counts:

---

[29] Plf.'s Original Compl., p. 21 ¶¶ 21–23.

- Lt. Williams;
- Sgt. Casey;
- Voisene; and
- Champion.[30]

The County Defendants also pray the Court grant such other and further relief to which the County Defendants may be entitled.

Respectfully submitted,

*Larry J. Simmons*

**Larry J. Simmons – Attorney-in-Charge**
State Bar No. 00789628
Southern District of Texas No. 18830
ljsimmons@germer.com
**Carmen Jo Rejda-Ponce – Of Counsel**
State Bar No. 24079149
Southern District of Texas No. 1366666
crejdaponce@germer.com
**GERMER PLLC**
2929 Allen Parkway, Suite 2900
Houston, TX 77019
(713) 650-1313 – Telephone
(713) 739-7420 – Facsimile

Henry W. Prejean
Assistant County Attorney
**WILLIAMSON COUNTY ATTORNEY'S OFFICE**
State Bar No. 16245850
405 Martin Luther King St., Box 7
Georgetown, Texas 78626
(512) 943-1111 Telephone
(512) 943-1431 Facsimile
hprejean@wilco.org

**COUNSEL FOR DEFENDANTS,
THE WILLIAMSON COUNTY DEFENDANTS**

---

[30] Hurdsman presents *no* factual allegations relating to Champion.

- 16 -

**CERTIFICATE OF SERVICE**

      I certify that on the 11th day of August 2017, a copy of the foregoing document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing, and served via certified mail, return receipt requested, and U.S. First Class Mail, on Plaintiff as follows:

Mr. Rodney A. Hurdsman
Wise County Jail
200 Rook Ramey
Decatur, TX  76234

                                                             **Larry J. Simmons**