

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY A. HURDSMAN | § § | |
| V. | § § | A-17-CA-290-SS |
| COMMANDER PAKLUDA, et al. | § § § | |

## ORDER

Before the Court are Plaintiff Rodney A. Hurdsman's complaint (Document No. 1) and the Motion for Partial Dismissal (Document No. 24), filed by Defendants Pakluda, Gleason, Williams, Brumleve, Casey, Mobley, Barcenas, Herrera, Villareal, Voisene, Wheless, Barnett, Harris, Nira, Davis, Champion, and Williamson County, Texas. Hurdsman did not file a response thereto. Hurdsman is proceeding pro se and has paid the full filing fee for his lawsuit.

## STATEMENT OF THE CASE

At the time he filed his complaint, Hurdsman was confined in the Williamson County Jail. He is currently incarcerated in the West Tennessee Detention Center in Mason, Tennessee.

Hurdsman sues Williamson County and employees of the Williamson County Sheriff's Office. Specifically, he names as defendants Commander Pakluda, Chief Gleason, Lieutenant Williams, Sergeant Casey, Sergeant Brumleve, Lieutenant Wheless, Sergeant Mobley, Sergeant Barnett, Sergeant Nira, Sergeant Harris, Officer Barcenas, Officer Herrera, Officer Villareal, Officer Voisene, Officer Davis, and Officer Champion.

1

Hurdsman was detained in the Williamson County Jail on April 27, 2015, until his transfer to the Wise County Jail on July 8, 2017. Hurdsman alleges he attempted to send legal mail to the Wise County Clerk on February 9, 2016, through the indigent legal mail system. Hurdsman indicates the mail was time sensitive. The following day, he was denied indigent postage supplies, and the mail was returned to him. The response on the request form allegedly stated, "Per Chief you can purchase the stamps off commissary." Hurdsman asserts he immediately resubmitted the envelope containing the legal mail along with four complaint/grievance forms directed to Gleason, Pakluda, Bertling, and the mailroom supervisor, explaining the legal requirements concerning a correctional facility's obligation to mail out an indigent inmate's legal mail.

Hurdsman discovered on or about April 30, 2016, his legal mail never arrived at the Wise County Court. After investigation, it was allegedly determined Defendant Gleason took Hurdsman's legal mail and removed it from the facility. Hurdsman asserts he submitted several other formal complaints and grievances concerning the legal mail and his conditions of his confinement.

In April 2016, Hurdsman alleges Defendant Williams confronted Plaintiff about his complaints and told him if he did not leave the issues of the missing legal mail and his jail conditions alone, Defendants Gleason and Pakluda were going to start "making things very hard on him at the jail." A week later, Defendant Voisene allegedly confronted Hurdsman and told him, "you have already been warned, and Pakluda has said that if you don't immediately stop pursuing your complaints about Gleason taking your legal mail there are going to [be] consequences for your actions."

Hurdsman states he submitted another complaint/grievance form on May 18, 2016, directed at Pakluda, because he had not received responses to his previous grievances. That same day,

2

Defendant Mobley moved Hurdsman to the disciplinary segregation area of the jail, placed him on 23-hour a day lockdown in isolation cell B9-R-6, which Hurdsman asserts is referred to as the "box" by Williamson County officials. At that time, Mobley allegedly told him, "if you would have just listened to Loyd and Voisene you would not be having any of these difficulties."

Towards the end of May 2016, Hurdsman was removed from "the box" and taken to the hallway where Gleason, Pakluda and two others were waiting. They allegedly asked why Hurdsman continued to complain about his legal mail. Hurdsman explained the legal mail contained a complaint that would be barred by a statute of limitations if not timely filed. Gleason allegedly responded Hurdsman was "going to find out the hard way" that Gleason runs the jail not Hurdsman. According to Hurdsman, the complaint he attempted to file in Wise County was barred by the statute of limitations, causing him to lose his interest in tens of thousands of dollars worth of property at issue in the case he was prosecuting.

In September 2016, while still housed in the disciplinary housing area of the jail, Hurdsman began complaining to employees, who worked that part of the jail, about how he was being housed in the box in retaliation for filing and pursuing formal complaints and grievances against Gleason for theft of his legal mail.

On September 21, 2016, Defendants Brumleve, Herrera, Barcenas, Villareal, and Davis allegedly came into Hurdsman isolation cell, physically assaulted him, and used the taser on him multiple times. Hurdsman alleges he suffered serious injuries, and the defendants denied him medical care for those injuries.

Hurdsman alleges, after the assault, he was returned to cell B9-R-6. At that time, Defendant Mobley allegedly told him, "Gleason and Pakluda have ordered that all tangible items be removed

from [Hurdsman's] cell except one bar of soap." According to Hurdsman, Mobley took everything from his cell except one bar of soap, one paperback dictionary, and some legal papers. Hurdsman asserts even his sleeping mat was removed.

For 30 days Hurdsman was allegedly required to sleep on a 3/16" steel plate. As a result, he claims he developed painful sores on his hips and outer thighs. During this 30-day period, Hurdsman requested verbally and in writing a sleeping mat and medical treatment for his open sores described by Hurdsman as 4-5" in diameter. But, his requests were denied.

Hurdsman alleges he was finally examined by a doctor, who stated the sores were "not good" and he did not have the authority to order a cushioning mat for Hurdsman. According to Hurdsman, Defendant Wheless was present, and he responded, "you brought it on yourself." Hurdsman asserts he continued to request a mat, but his requests were ignored.

Hurdsman asserts Defendant Mobley on orders from Defendants Gleason and Pakluda removed all writing instruments, writing paper, letter envelopes, and postage stamps from Hurdsman's cell. Defendants Pakluda, Mobley, and Casey allegedly ordered all other personnel to not allow Hurdsman to have or purchase any items from the jail's commissary, which included writing instruments, paper, envelopes, and postage stamps. Because of this, Hurdsman alleges he was denied his right to correspond with the outside world. Defendant Mobley also allegedly removed Hurdsman's Bible and all other religious material from Hurdsman's cell. Hurdsman states he was denied these religious materials for over 30 days. Hurdsman further asserts he was denied his right to access the courts and legal documents stored on his USB thumb drive.

Hurdsman alleges he has been kept on 23-hour and sometimes 24-hour lockdown, placed on suicide watch and forced to wear a smock even though he has never made suicidal comments or

4

exhibited suicidal acts, denied shaving razors to shave his face, placed on a soft tray or paper sack meal, and videotaped.

Hurdsman asserts claims for (1) retaliation, (2) excessive use of force, (3) infliction of corporeal punishment due to use of physical restraint chair, (4) denial of emergency medical treatment after use of force, (5) infliction of corporeal punishment due to denial of sleep mat, (6) denial of medical treatment for bed sores, (7) denial of access to the courts, (8) denial of freedom of religion, (9) denial of right to correspond with the public, (10) harassment, intimidation, and threats, and (11) conspiracy to violate civil rights. Hurdsman contends Williamson County is liable due to inadequate and inept policies, procedures, and customs. He further contends Williamson County is responsible for inadequate training, supervision, discipline, and oversight of its employees.

Hurdsman requests compensatory damages in the amount of $400,000.00, punitive damages in the amount of $500,000.00, declaratory relief, injunctive relief, and court costs.

Defendants move for partial dismissal. Specifically, Defendants move to dismiss Hurdsman's claims for retaliation (claim one), denial of access to the courts (claim seven), denial of Freedom of Religion (claim eight), denial of right to correspond with the public (claim nine), harassment, intimidation and threats (claim ten), and conspiracy to violate civil rights (claim eleven). They argue Hurdsman fails to state a claim upon which relief can be granted with respect to these claims. Defendant Champion moves to dismiss the claims against him, because Hurdsman failed to make any allegations concerning him.

## DISCUSSION AND ANALYSIS

I.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) asks a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must plead sufficient facts to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish that the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

In deciding a motion to dismiss under Rule 12(b)(6), a court generally accepts as true all factual allegations contained within the complaint. *Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts "must consider" the complaint, as well as other

6

sources such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

    A.    <u>Retaliation</u>

Defendants contends Hurdsman fails to state a cognizable claim of retaliation against them because their alleged actions, even if true, did not chill or deter Hurdsman from exercising his constitutional rights.

A prison official may not retaliate against or harass an inmate for exercising his right of access to the courts or his other First Amendment rights. *See Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (use of prison grievance system); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (access to courts). To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) causation; and (4) a retaliatory adverse action. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). An adverse action is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris*, 449 F.3d at 686. In addition, the Fifth Circuit has explained a retaliatory adverse action can be an action taken in an effort either to chill a plaintiff's exercise of his First Amendment rights, or to punish him for having exercised that right. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).

Hurdsman sufficiently alleges a claim of retaliation. While Hurdsman himself was not deterred from exercising his constitutional rights, the acts allegedly taken by defendants were certainly capable of deterring a person of *ordinary* firmness from exercising his constitutional rights and are alleged to have occurred as punishment for exercising the plaintiff's constitutional rights.

Accordingly, Defendants' Motion for Partial Dismissal is denied with respect to Hurdsman's retaliation claim.

B.  Access to Courts

Defendants argue Hurdsman's access-to-courts claim fails as a matter of law because he did not suffer an actual injury relating to litigation involving his criminal conviction or the conditions of his confinement.

In order to have standing to claim the processing of his legal mail constituted a denial of his right of access to the courts, Hurdsman must demonstrate an actual injury stemming from the defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351–54 (1996); *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (without proving actual injury, the prisoner plaintiff cannot prevail on an access-to-courts claim); *Chriceol v. Phillips*, 169 F.3d 313 (5th Cir.1999). "Actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348. The Constitution only requires that prisoners be able to present their grievances to the courts and, therefore, neither frivolous filings nor secondary litigation activity, such as legal research and writing that does not involve preparation of lawsuits challenging the inmate's own conviction or the conditions of his confinement, may form the basis for a claim. The impairment of such litigation activity is simply one of the incidental and perfectly constitutional consequences of conviction and incarceration. *Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir.1997).

Hurdsman admits the injury he suffered was with regard to secondary litigation activity involving property, not his conviction or conditions of confinement. Therefore, Defendants' Motion for Partial Dismissal is granted with respect to Hurdsman's access-to-courts claim.

C.   Religious Freedom

Defendants argue the confiscation of Hurdsman's Bible and "other religious materials" is merely a *de minimis* injury that did not impose a substantial burden on his religious exercise. They rely on unpublished case *Carter v. Hubert*, 452 Fed. Appx. 477 (5th Cir. 2011), for the proposition that a prisoner must allege more than a *de minimis* injury to state a First Amendment claim. They further rely on a case out of the Eastern District of Texas, *Simpson v. Dir. TDCJ-CID*, No. 4:15-CV-644, 2017 WL 1022783, at *2 (E.D. Tex. Mar. 16, 2017) for the proposition that confiscation of religious study materials did not amount to a free exercise violation.

A careful examination of *Carter* shows the Fifth Circuit upheld the district court's grant of summary judgment because the plaintiff had not alleged he suffered a physical injury that was more than *de minimis*. Accordingly, 42 U.S.C. § 1997e barred Carter's request for compensatory damages. However, punitive damages may stand in the absence of actual damages where there has been a constitutional violation. *Williams v. Kaufman Cnty*, 352 F.3d 994, 1015 (5th Cir. 2003). And in *Simpson*, the plaintiff acknowledged he was informed his religious materials were confiscated because they were not properly stored. In the case at hand, Hurdsman requests punitive damages in addition to compensatory damages. Moreover, construing Hurdsman's allegations in his favor, the confiscation of the Bible and "other religious materials" were not taken for a legitimate purpose but rather were taken in retaliation of Hurdsman's exercise of his First Amendment rights or the confiscation was motivated by evil intent. For these reasons Defendants' Motion for Partial Dismissal on Hurdsman's freedom of religion claim is denied.

D.   Right to Correspond

Defendants contend the confiscation of Hurdsman's writing instruments, paper, envelopes, and postage, and his temporary loss of phone privileges do not give rise to a constitutional violation. They argue restrictions to means of communication do not violate constitutional rights as long as the inmate does not suffer from an inability to communicate with the courts, counsel, family or friends. Defendants maintain Hurdsman does not allege he was restricted from all means of communication, such as personal visits and receiving mail from his family and others. Additionally, they assert Hurdsman was able to obtain writing instruments, paper, envelopes, and postage by bartering with other inmates. Finally, they argue Hurdsman failed to allege any actual injury.

It is well-recognized inmates have a First Amendment right both to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Prison officials may be able to justify certain restrictions on mail by showing a valid reasonable penological justification therefor in accordance with the analysis set forth in *Turner v. Safely*, 482 U.S. 78 (1987) (setting for a four-part fact-based analysis for the evaluation of prison regulations and restrictions that impose constitutional limitations upon prisoners). However, no justification has been provided in this case for the confiscation of Hurdsman's writing instruments, paper, envelopes, and postage, and the denial of phone privileges other than retaliation for his exercise of his constitutional rights. Most of the cases relied on by Defendants in support of their argument found no constitutional violations when phone privileges were restricted because the inmate had access to mail. Defendants appear to ignore Hurdsman allegations that he was denied access to outgoing mail. The fact Hurdsman was able to thwart the defendants' restrictions by bartering with other inmates for correspondence material is of no

consequence. Defendants' Motion for Partial Dismissal on Hurdsman's correspondence claim is denied.

E. Harassment, Intimidation, and Threats

Defendants move to dismiss Hurdsman's claims alleging harassment, intimidation and threats. The law is clear verbal abuse by a prison guard does not give rise to a cause of action under §1983. *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993)). Accordingly, Defendants' Motion for Partial Dismissal is granted with respect to Hurdsman's freestanding claim of harassment, intimidation, and threats. However, Hurdsman's allegations may provide further support for his retaliation claim.

F. Conspiracy

Defendants also move to dismiss Hurdsman's conspiracy claim. They explain Hurdsman cannot establish a conspiracy claim because the alleged parties to the conspiracy are all employees of the Williamson County Sheriff's Office.

A single legal entity, such as the Williamson County Sheriff's Office and its officers, is incapable of conspiring with itself for the purposes of § 1983. *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997). Accordingly, Defendant's Motion for Partial Dismissal is granted with respect to Hurdsman's conspiracy claim.

G. Defendant Champion

Hurdsman does not present any factual allegations relating to Defendant Champion. Accordingly, Defendants' Motion for Partial Dismissal is granted with respect to Defendant Champion.

## CONCLUSION

Defendants' motion for partial dismissal is granted with respect to Hurdsman's claims for: denial of access to courts; harassment, intimidation, and threats; and conspiracy. Defendants' Motion for Partial Dismissal is also granted with respect to Hurdsman's claims against Defendant Champion. Defendants' motion is denied in all other respects.

It is therefore **ORDERED** that the "Partial Motion to Dismiss," filed by Defendants Pakluda, Gleason, Williams, Brumleve, Casey, Mobley, Barcenas, Herrera, Villareal, Voisene, Wheless, Barnett, Harris, Nira, Davis, Champion, and Williamson County, Texas on August 11, 2017, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff Rodney A. Hurdsman's claims for: denial of access to courts; harassment, intimidation, and threats; and conspiracy are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

It is further **ORDERED** that Plaintiff Rodney A. Hurdsman's claims against Defendant Champion are **DISMISSED WITHOUT PREJUDICE**.

SIGNED this _13th_ day of November 2017.

_/s/ Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE